UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| KENNETH RAY HARRIS,<br><br>Petitioner,<br><br>v.<br><br>COLLEEN NOLL, Warden,<br><br>Respondent. | No. C 09-4354 LHK (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

## INTRODUCTION

This is a federal habeas corpus action filed by a *pro se* state prisoner pursuant to 28 U.S.C. § 2254. For the reasons set forth below, the petition is DENIED.

## BACKGROUND

In 1987, Petitioner pleaded guilty in the Sacramento County Superior Court to a charge of second degree murder, and was sentenced to fifteen years-to-life in state prison. In 2007, the Board of Parole Hearings ("Board") found Petitioner unsuitable for parole on grounds that he "would pose an unreasonable risk of danger to society and a threat to public safety if released from prison." (Pet., Ex. A at 64.) In response to the Board's decision, Petitioner sought, though was denied, relief on state collateral review. This federal habeas

petition followed.

In reaching its decision, the Board considered the facts of the commitment offense. In October 1986, Petitioner hitchhiked over 180 miles from Marina, California to Sacramento[1] to his former girlfriend Heidi's apartment, watched Heidi leave for work, broke into her apartment, and waited for her to return. After arguing with Heidi for four hours after her return, Petitioner choked her with his hands until she was unconscious, having decided that "their relationship was over and if he didn't have her, no one would." As she started to regain consciousness, he looped a cord around her neck, and strangled her from behind until she again fell into unconsciousness. When she was coming to for the second time, Petitioner sat on Heidi's chest, and pressed a candlestick holder on her throat until she died. (*Id.* at 11–12, 13 & 51.) From these circumstances, the Board found that the murder was carried out in a manner that was both "cruel and callous," and "dispassionate and calculated." (*Id.* at 64.) Two weeks before the murder, Petitioner had assaulted Heidi, breaking her jaw and fracturing her eyesocket. (*Id.* at 50 & 66.)

In addition to the circumstances of the commitment offense, the Board cited his psychological report and his criminal history as factors in its decision. According to his latest psychological report, Petitioner presents a low to moderate risk of future violence. (*Id.* at 36 & 37.) The Board found that, based on Petitioner's assault of the victim two weeks before the murder and his adult misdemeanor conviction for obstructing a police officer, Petitioner had a record of escalating criminal conduct and violence. (*Id.* at 66.)

The Board also considered factors in Petitioner's favor, including his prison disciplinary record, his participation in programming, and his parole plans. Of late, Petitioner's prison disciplinary record has been favorable, Petitioner having received his last serious disciplinary citation in 1993, though he had accumulated six during the course of his incarceration. Petitioner has copiously participated in self-help programming, and has

---

[1] Heidi had moved to Sacramento to be far from Petitioner. (*Id.* at 50– 51.)

adequate and "feasible" parole plans. (*Id.* at 59.)

In light of all these factors, the Board concluded that Petitioner posed an unreasonable threat to public safety and denied him parole.

As grounds for federal habeas relief, Petitioner alleges that (1) the Board violated his plea agreement by not setting a parole date according to the standards of the sentencing matrix; (2) it was a violation of the plea agreement to treat Petitioner's offense as if it was first degree murder; and (3) there was not "some evidence" to support the denial.

## STANDARD OF REVIEW

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412–13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

*Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

## DISCUSSION

### I. Plea Agreement

Petitioner contends in two claims that the Board's decision violated his rights under his plea agreement.

#### A. Setting a Parole Release Date

Petitioner contends that the Board violated his rights under the plea agreement by not setting a parole release date within the guidelines set forth in the sentencing matrix, weighted according to his conviction for second degree murder. (Pet. at 6.)

Petitioner's claim fails. First, Petitioner has not provided the Court with a copy of his plea agreement, thereby preventing the Court from determining what he was in fact promised. The Court presumes that he was told at the time he entered his plea of guilty that he could be eligible for parole at some time. The fact that Petitioner was eligible for parole does not mean that he was promised that the Board would set a sentence under the matrix. Second, case law does not support Petitioner's contention. The Board is under no duty to set a parole release date under the sentencing matrix once it has determined that a prisoner is unsuitable for parole. *In Re Dannenberg*, 34 Cal. 4th 1069, 1071 (Cal. 2005). As Petitioner had not been found suitable for parole, the Board was under no obligation to set a parole release date, and therefore its decision did not violate Petitioner's rights. Accordingly, Petitioner's claim is DENIED.

#### B. Length of Sentence Served

Petitioner contends that the Board violated his right to due process and his rights under his plea agreement when it treated his second degree murder conviction as if it were a first degree murder. (Pet. at 6.) More specifically, because he has served a sentence as long as that given as punishment for a first degree murder conviction, his rights were violated.

Petitioner has given no factual or legal support for his contention. Petitioner was sentenced to fifteen years-to-life. That he has served more than his minimum, and that that time served is equal or greater than the minimum sentence for first degree murder is a matter of coincidence, not a matter, on the record before the Court, implicating his constitutional rights. Accordingly, Petitioner's claim is DENIED.

## II.   "Some Evidence"

Petitioner claims that the Board's decision violated his right to due process because it was not based on "some evidence" that he currently poses an unreasonable risk to public safety. Due process requires that the Board's decision to deny a California prisoner parole be supported by "some evidence" of current dangerousness. *Hayward v. Marshall*, 603 F.3d 546 (9th Cir. 2010); *see also Pearson v. Muntz*, No. 08-55728, 2010 WL -- (9th Cir. May 24, 2010) (per curium). Accordingly, in reviewing federal habeas claims that a California prisoner was denied parole in violation of due process, courts must "decide whether the California judicial decision approving the governor's [or the parole board's] decision rejecting parole was an "unreasonable application" of the California "some evidence" requirement, or was "based on an unreasonable determination of the facts in light of the evidence." *Hayward*, 604 F.3d at 562–63.

The commitment offense alone does not always provide evidence that a Petitioner poses a current threat to public safety. *Id.* at 562. The offense does not establish current dangerousness "unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state" supports an inference of dangerousness. *Id.* (citing *In re Lawrence*, 44 Cal. 4th 1181, 1214 (Cal. 2008).)

Here, the record shows that there was "some evidence" to support the state court's approval of the Board's parole denial. First, the horrifying circumstances surrounding the commitment offense — the planning and preparation, and doggedly completing the murder through three violent attempts — provide evidence that the crime was cruel and callous, as well as dispassionate and calculated. Second, the record establishes that Petitioner's pre- and

post-conviction history supports an inference of current dangerousness, in particular (1) the fact that his crimes were escalating in violence — his violent assault of Heidi, during which he broke her jaw, was followed two weeks later by his killing of her; and (2) his assessment of presenting a low to moderate risk of future violence.   While a rating of low to moderate is not dispositive, it does constitute some evidence of current dangerousness in addition to the commitment offense. *See Hayward*, 603 F.3d at 570–71 (Berzon, J., concurring). It is reasonable to infer from this record of past violence and current risk of violence that, if released, Petitioner currently poses an unreasonable risk of danger to society, or a threat to public safety.  In sum, the state court's approval of the Board's decision, therefore, was not an "unreasonable application" of the California "some evidence" requirement, nor was it "based on an unreasonable determination of the facts in light of the evidence." Petitioner's claim is DENIED.

## CONCLUSION

The state court's denial of Petitioner's claims did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, the petition is DENIED.

A certificate of appealability will not issue. Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may seek a certificate of appealability from the Court of Appeals.

The Clerk shall enter judgment in favor of Respondent, and close the file.

**IT IS SO ORDERED.**

DATED: October 28, 2010

_____
LUCY H. KOH
United States District Judge